UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RODNEY THOMAS, JR. | No. 3:20-cr-51 (SRU) |

**RULING ON MOTION FOR RECONSIDERATION**

Defendant Rodney Thomas, Jr., a federal presentencing detainee currently confined at New Haven Correctional Center ("NHCC") in New Haven, Connecticut, filed this motion for reconsideration of an order of detention issued by United States Magistrate Judge Robert M. Spector. Thomas seeks release to home confinement or, in the alternative, to be transferred from NHCC to Donald W. Wyatt Detention Facility ("Wyatt"). I **grant** Thomas's request to review the order and, for the foregoing reasons, I **deny** the relief sought.

**I.      Background**

On March 11, 2020, a grand jury charged Thomas and several alleged co-conspirators with Mail Fraud, in violation of 18 U.S.C. § 1341; Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. § 1349; and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). Indictment, Doc. No. 1.

On February 15, 2022, after a jury trial, Thomas was convicted on all counts charged in the Indictment. Verdict, Doc. No. 239. After the verdict was announced, I ordered Thomas released pursuant to the terms of his pretrial release. Minute Entry, Doc. No. 222. Two conditions of Thomas's release included that he "must not violate federal, state, or local law while on release," and that his travel was restricted to Connecticut. Order, Doc. No. 36; Order, Doc. No. 84, at 1.

On May 24, 2022, Thomas allegedly crossed state lines into New York without permission and, while there, engaged New York State Police in a highway pursuit. Petition for Action on Conditions of Pretrial Release ("the Petition"), Doc. No. 278. Thomas was subsequently arrested and charged with fleeing from an officer in a motor vehicle in the third degree, in violation of N.Y. Penal Law § 270.25, and reckless endangerment in the second degree, in violation of N.Y. Penal Law § 120.20. *Id.* at 1-2. Thereafter, Thomas confirmed to his Probation Officer that he went to New York with a friend, that he "got scared" of a police vehicle tailing his vehicle, and that he was arrested. *Id.* The Probation Office petitioned this Court to issue Thomas a summons and order that he show cause regarding why he should remain at liberty. *Id.*

On May 31, 2022, Thomas appeared before Judge Spector regarding the alleged violation of the terms of his presentencing release. Minute Entry, Doc. No. 283. At the hearing, Judge Spector reviewed the contents of the Petition.[1] Thomas did not dispute the allegations; indeed, he identified no objections to the statement of facts therein. The government moved for an order of detention. Oral Motion, Doc. No. 282. The Probation Office supported the motion, expressing concerns regarding Thomas driving on a suspended license and fleeing from the police. After Judge Spector considered the May 24, 2022 incident and Thomas's prior violations, he remanded Thomas to the custody of the United States Marshals Service ("USMS") and ordered him detained. Order of Detention, Doc. No. 286. In a subsequent text order, Judge Spector wrote:

> For the reasons set forth on the record during the bond hearing on May 31, 2022, which are incorporated here by reference, the Court, pursuant to 18 U.S.C. sec. 3148(b), finds probable cause that [Thomas] committed another crime while on pretrial release and clear and convincing evidence that the defendant violated a condition of release, and concludes that no condition

---

[1] No formal transcript of the hearing was requested or made, but an audio recording of the hearing was made.

> or combination of conditions will assure the defendant's future appearance in court and the safety of the community. As a result, the Court revoked the defendant's release and remanded him into custody pending sentencing, which is currently scheduled for August 23, 2022.
>
> As the Court explained during the hearing, the defendant has violated the conditions of release on multiple prior occasions either by driving while on a suspended license or by flouting the court-imposed curfew despite warnings from his supervising probation officer. Indeed, the Court has previously addressed the defendant on the importance of following the court's release conditions and the directions of his probation officer. Though his attorney has filed, and this Court has granted, numerous requests for modifications of the conditions of release to permit the defendant to engage in activities not expressly permitted by the conditions, he has, on occasion, violated the release conditions by not seeking advanced permission from the Court or by going beyond the bounds of the permission granted to him.
>
> Most recently, as reported in the May 25, 2022 petition, on May 24, 2022, the defendant left Connecticut without permission and traveled to the Buffalo, New York area to drive a friend to a court hearing. When the police attempted to pull him over for speeding, the defendant made the decision to flee and engaged the police in such a dangerous, high-speed chase, that the New York State trooper decided to break off the pursuit for fear that someone would be injured. The defendant was arrested later when the local police identified the vehicle he had been driving at the courthouse. The defendant does not contest the factual allegations in the Petition and, more specifically, does not contest that he left Connecticut without permission and that he was arrested for several class A misdemeanors in New York, including fleeing from the police and reckless endangerment. He was also driving on a suspended license.
>
> The Probation Office recommended detention based on its inability to supervise effectively the defendant under the current release conditions. The Court agreed with that assessment. The defendant's decisions to drive to Buffalo, New York, without permission, on a suspended license and to engage the police in such a dangerous high-speed chase that the trooper had to suspend the pursuit show that there is no condition or combination of conditions that would assure the defendant's future presence in court or the safety of the community.

Doc. No. 286 (paragraph breaks added). Accordingly, Judge Spector ordered Thomas detained until sentencing, currently scheduled for August 23, 2022. *Id.*; Calendar Entry, Doc. No. 284.

Thomas now moves for reconsideration of Judge Spector's order of detention, seeking to be released on home confinement or, in the alternative, to be transferred from NHCC to Wyatt. *See generally* Motion for Review, Doc. No. 289.

## II.     Standard of Review

An individual ordered detained by a United States Magistrate Judge may move the District Court to amend or revoke the order. 18 U.S.C. § 3145(b). The District Court reviews the Magistrate Judge's ruling *de novo*. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

## III.    Discussion

Upon review of the record, I agree with Judge Spector's well-reasoned ruling and order of detention, and I conclude that I am unable to order Thomas transferred to Wyatt.

### A.    Judge Spector Properly Ordered Thomas Detained

After being convicted, a defendant must carry the burden of proof to establish entitlement to bail and presentencing release. *United States v. Harris*, 192 F. Supp. 3d 337, 346-47 (W.D.N.Y. 2016). The burden is high, because an individual "who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . [shall] be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1).

If an individual is released after a conviction, he is subject to sanctions for violating a condition of his release. Specifically, pursuant to the two-prong test set forth in 18 U.S.C. § 3148, a judicial officer "shall" revoke an order of release and detain an individual if the judicial officer, after a hearing: "(1) finds that there is (A) probable cause to believe that the person has

committed a . . . State, or local crime while on release," or that there is "(B) clear and convincing evidence that the person has violated any other condition of release;" *and* if the judicial officer (2) finds by a preponderance of the evidence that "(A) . . . there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community;" or that "(B) the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b); *United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986) (adopting the preponderance standard).

*First,* I find probable cause that Thomas committed another crime while on release. The essential facts of the May 24, 2022 incident are not in dispute. *See* Petition, Doc. No. 278. Thomas does not dispute that, while driving on a suspended license, he engaged New York State Police in a high-speed pursuit on an interstate highway. *Id.* at 2. After, Thomas was arrested and charged with two violations of New York state criminal law, fleeing an officer in a motor vehicle and reckless endangerment. *Id.* Thomas's arrest, as a matter of constitutional law, was predicated on the existence of probable cause to believe that he committed the crimes charged. *Villiers v. Decker*, 31 F.4th 825, 837 (2d Cir. 2022) (addressing violations of New York state law). Therefore, I find that there is probable cause to conclude that Thomas committed another crime while on release.

*Second*, I find by clear and convincing evidence that Thomas violated a condition of release. Thomas was prohibited from traveling outside of Connecticut without consent, but he does not dispute that he did so. Docs. No. 84, 278. Moreover, Thomas has previously violated conditions of release by repeatedly driving on a suspended license, doc. no. 84, and by not complying with his curfew, doc. no. 111.

*Third*, I conclude that Thomas has not satisfied by a preponderance of the evidence that some condition or combination of conditions will ensure his future appearance in court and the safety of the community.

In my view, Thomas's conduct evinces sufficient danger to the community to warrant revoking the order of release and ordering him detained. Despite repeated warnings about complying with the conditions of his liberty, including proscriptions on interstate travel and on violating state laws, Thomas nevertheless flouted those conditions by driving a vehicle on a suspended license, crossing state lines without authorization, and most importantly fleeing from the police at a dangerously high speed, presumably to evade capture. Thomas accelerated his vehicle so much that the New York State Police ceased pursuit. This conduct suggests that he has a propensity to flee, casting doubt on his trustworthiness to appear and counseling in favor of detention. *See United States v. Wiggins*, 2020 WL 3579476, at *2 (W.D.N.Y. June 29, 2020) (denying a motion for release pending sentencing where, *inter alia*, the defendant had engaged the police in a pursuit on foot at the time of arrest).

Moreover, Thomas has a significant motive to flee. He is facing a statutory maximum of twenty years' incarceration and an advisory guidelines imprisonment range that, but for the statutory maximum, would be 292 to 365 months' incarceration, arising from his convictions. PSR, Doc. No. 263, at 40 ¶¶ 146-47. Courts have concluded that lengthy sentences provide a defendant with a strong motive to flee if released. *United States v. Blanco*, 570 F. App'x 76, 77 (2d Cir. 2014). For that reason, courts have determined that lesser sentences than the one Thomas faces counsel in favor of detention. *E.g.*, *United States v. Newton*, 2020 WL 1862630, at *1 (S.D.N.Y. Apr. 13, 2020) (concluding that the defendant had a significant motive to flee

6

where he faced a five-year mandatory minimum sentence and a guidelines range of 87 to 108 months' imprisonment).

As a result, I affirm Judge Spector's decision to revoke Thomas's release and remand him into custody pending sentencing. I do not do so lightly, and I acknowledge the imposition Thomas's detention will impose on his family, including by preventing Thomas from helping his sister with childcare and with household expenses.

B. The Court Cannot Order Thomas Transferred to Wyatt

In the alternative to release on home confinement, Thomas seeks to be transferred to Wyatt. Thomas provides no authority for the proposition that I may transfer him to another facility, and whether a district court may order the USMS to relocate a detainee appears to be a question of first impression in the Second Circuit. Addressing the salient statutory and regulatory text as well as analogous contexts, I conclude that it appears that I lack the authority to order the requested transfer. Accordingly, I deny Thomas's request.

Thomas, as a federal presentencing detainee, is in the custody of the USMS, a bureau of the United States Department of Justice operating under the direction of the Attorney General of the United States. 28 U.S.C. § 561. The agency takes custody of a detainee like Thomas pursuant to its duties to execute the lawful orders and writs of the federal courts, 28 U.S.C. § 566, and to "provide for the safe-keeping of any person . . . held under authority of any enactment of Congress pending confinement to an institution," 18 U.S.C. § 4086. To those ends, the USMS may contract with another entity, including a local government like the City of New Haven, to house a detainee. 18 U.S.C. §§ 4002, 4013(a).

Federal regulation endows the USMS with a broad grant of authority for the "[s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a

7

marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence. . . ." 28 C.F.R. § 0.111(k).  In addition, federal regulation charges the agency with "[a]cquisition of adequate and suitable detention space, health care and other services and materials required to support prisoners under the custody of the U.S. Marshal who are not housed in Federal facilities." *Id.* § 0.111(*o*).  Courts have repeatedly recognized that this "open-ended" grant of authority favors judicial deference to the USMS regarding the placement of detainees.  *Cometa v. Doe*, 2018 WL 11247169, at *1 (M.D. Fla. Aug. 15, 2018).  The USMS must evaluate many complexities in determining placement, including "expense, administration, payment, [and] access to the premises," *Saunders v. United States*, 502 F. Supp. 2d 493, 496 (E.D. Va. 2007), as well as whether a facility "ha[s] room to house a prisoner, whether appropriate medical or psychiatric care is available for an inmate's specific needs, whether the inmate must be separated from other inmates in the custody of the Marshal, [and] whether the inmate will have reasonable access to his attorney given his proximity," *United States v. Espinoza-Arevalo*, 2015 WL 9598299, at *5 (W.D. Mo. Dec. 30, 2015).  In light of the USMS's broad grant of authority and its important policy interests, district courts have uniformly concluded that determining a detainee's placement is within the sole discretion of the USMS and, where applicable, have refused a detainee's request to be transferred to another facility.  *See, e.g.*, *United States v. Dixon*, 2021 WL 4129623, at *2 (D.N.D. Sept. 9, 2021); *Phillips v. United States*, 2022 WL 705335, at *2 (D. Kan. Mar. 9, 2022); *Cometa*, 2018 WL 11247169 at *1; *Espinoza-Arevalo*, 2015 WL 9598299, at *3; *Valdez v. U.S. Marshal Serv.*, 2014 WL 4103204, at *4 n.5 (W.D. La. Aug. 13, 2014); *United States v. Stile*, 2013 WL 12195872, at *2 (D. Me. Nov. 27, 2013); *Saunders*, 502 F. Supp. 2d at 496; *Falcon v. U.S.*

*Bureau of Prisons*, 852 F. Supp. 1413, 1420 (S.D. Ill. 1994), *aff'd on other grounds*, 52 F.3d 137 (7th Cir. 1995).

Concluding that the USMS retains discretion regarding placement of a detainee is legally supported on additional bases. First, "the Constitution . . . does [not] guarantee that a convicted prisoner will be placed in any particular prison;" therefore, Thomas lacks a constitutional entitlement to transfer facilities without a showing that he is being "punished" by his designation to NHCC. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Second, Congress has expressly granted the Attorney General with sweeping authority regarding the care and custody of incarcerated individuals, and it is appropriate to contextualize the USMS's presentence custody of Thomas within that statutory scheme. With respect to sentenced prisoners, for example, Congress expressly grants sole and exclusive discretion to the Bureau of Prisons to "designate the place of the prisoner's imprisonment" and to "direct the transfer of a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b). Congress has even stripped federal courts of jurisdiction to review such decisions. *Id.* Although Congress has not likewise expressly committed the authority to designate and transfer detainees to the discretion of the USMS, the agencies' analogous duties in this context and their similar policy considerations counsel against deciding that this Court may order the USMS to transfer a detainee's location.

Here, the USMS determined that Thomas should be confined at NHCC. When it did so, the agency presumably weighed administrative concerns regarding access to counsel, capacity, expense, services, and other crucial facts of which this Court should not review. Because it appears that the decision to place Thomas in NHCC was appropriately within the USMS's discretion, I decline to overrule its decision by ordering Thomas transferred to Wyatt.

Accordingly, I deny Thomas's request for alternative relief.

C. Conditions of Confinement

Thomas alleges that the conditions at NHCC are "deplorable," due to inadequately sized bedding, twenty-three-hour lockdowns, and inadequate treatment of medical issues. Doc. No. 289, at 2. To the extent that Thomas seeks relief related to these alleged conditions of confinement, such relief is properly sought pursuant to a civil action. *E.g.*, *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (citing to 42 U.S.C. § 1983). Here, however, Thomas moves for reconsideration of an order of detention in a criminal matter. Because issues relating to his conditions of confinement are not properly presented, I decline to reach them on this motion.

IV. Conclusion

For the foregoing reasons, the relief sought in Thomas's motion, doc. no. 289, is **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 28th day of June 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge